WARD and another *against* GREEN and another.

The act of riding on the *Sabbath* being lawful or unlawful according to the motive and object of the party, it was held, in an action for an arrest of the plaintiff on a charge of violating the statute for the due observation of that day, that the course of conduct of the plaintiff immediately preceding the arrest, particularly his coming into town from another place, and riding up and down the streets and going from one public house to another, was admissible to show with what intent the plaintiff was riding at the time of the arrest.

Where the defendant, in such action, offered evidence by record, that the plaintiff was, upon complaint made, arrested, and brought before a justice of the peace and convicted of having unlawfully travelled on the *Sabbath;* it was held, that such evidence was admissible, not to prove the plaintiff's guilt, but to show the arrest and the fact that the complaint was pursued.

A grand-juror is empowered by law to arrest, on sight, persons unlawfully travelling on the *Sabbath.*

He has a right to use reasonable means to make the arrest; and if for that purpose it is necessary to stop and detain the horse and carriage of the party, he is justifiable in so doing; the question whether the means used were reasonable and necessary, being a question of fact to be submitted to the jury.

The defence to an action for stopping and detaining the plaintiff's horse and carriage, is not invalidated, by the fact that the plaintiff was not carried before a magistrate, upon the charge, if this resulted from the fact that the plaintiff avoided the arrest.

A grand-juror is a known officer, and as such, is not bound to declare his character, nor the cause of arrest, until the party submit to the arrest, or at least demand the cause.

THIS was an action of trespass for taking and detaining a horse and gig.

The cause was tried at *New-Haven, October* term, 1835, before *Williams,* Ch. J.

The plaintiffs claimed to have proved the taking and detention of the property. The defendants were grand-jurors of the town of *Milford;* and claimed, that whatever was done by them, was done in that capacity. They claimed, that the plaintiffs were travelling unlawfully, on the *Lord's* day, in that town; and that the defendants, seeing them in the act, stopped the horse, for the purpose only of apprehending the plaintiffs; and that the plaintiffs, to avoid the arrest, went off and left the horse and gig in the possession of the person, who was, by order of the defendants, holding them, while they were attempting to arrest the plaintiffs' bodies.

The plaintiffs denied, that they were travelling unlawfully on the *Lord's* day; and that, therefore, the defendants, as grand-jurors, had no right to apprehend them.

To prove that the plaintiffs were travelling for amusement and recreation, and not for necessity or charity, the defendants offered evidence, that the plaintiffs came into *Milford* from *New-Haven,* on that day; and that they had been riding up and down the streets of *Milford,* and going from one public house to another in the town; and to show their course of conduct while there. The plaintiffs objected to any evidence, except that they were travelling when arrested; or any evidence of facts before the time of their arrest. But the court admitted the evidence offered, to show, that the defendants were travelling contrary to law, but not to prove any other violation of the *Sabbath.*

The plaintiffs denied that any arrest of their bodies had been made. The defendants claimed to have proved, that the plaintiffs avoided the arrest; and offered record evidence to show, that the day but one afterwards, the plaintiffs were, on complaint made, arrested, and brought before a justice of the peace, for thus violating the *Sabbath,* and were convicted. To this evidence the plaintiffs objected; but the court admitted it, to prove the fact that the complaint was pursued, and to repel the plaintiffs' claim that they were not arrested, but not as evidence to prove their guilt.

On the whole case, the plaintiffs claimed, 1st, that they were not travelling unlawfully upon the *Sabbath;* 2ndly, that if they were, the defendants had no right to take or stop the horse or gig; 3dly, that they did not pursue up their proceedings, by apprehending the plaintiffs, nor carry them before a magistrate; 4thly, that they did not declare that they were grand-jurors, nor declare to them for what offence they were arresting them.

The court thereupon instructed the jury, that whether the plaintiffs were travelling on the *Sabbath* unlawfully, and not for necessity or charity, was a matter of fact for them to find, upon the evidence before them. If the plaintiffs were so travelling, the defendants might, on the sight, stop and arrest them. As to stopping the horse, the defendants had a right to use reasonable means to arrest the plaintiffs; and if, for that purpose, it became necessary to stop and detain the horse and gig, they were justified in so doing. But if under colour of this

*New-Haven,*
*July, 1836.*

**Ward**
*v.*
**Green.**

authority, they had unnecessarily detained or arrested the plaintiffs' property, they must be responsible. The fact that the plaintiffs were not carried before a magistrate, by the defendants, upon the charge, would make no difference, if it arose from the fact that the plaintiffs avoided the arrest. The grand-jurors were known officers, and, of course, were not bound to inform the plaintiffs of their character, nor to declare the cause of the arrest, until the party submitted to the arrest, or at least demanded the cause.

The jury returned a verdict for the defendants. To the several opinions of the court in admitting the evidence and in the charge to the jury, the plaintiffs excepted ; and thereupon moved for a new trial.

*Mix,* in support of the motion, contended, 1. That the charge of the court was erroneous.

First, because the grand-jurors had no right to arrest, unless it was apparent to their sight, that the plaintiffs were travelling not from necessity or charity, and did not believe they were. *State* v. *Meyers,* 1 *Conn. Rep.* 502. *Roscoe on Ev.* 374. *Beckwith* v. *Philby* & al. 6 *Barn. & Cres.* 635.

Secondly, the only right the defendants had, if any, was to apprehend the parties, and carry them before a justice. This is all the power the statute gives them ; and it must be strictly pursued. 1 *Esp. Dig.* 336, 7. 329, 30.

Thirdly, if the defendants could do any thing more than merely arrest, they could use only those means which were necessary and essential ; and if they detained the property at all, beyond what was necessary to arrest, it was a trespass, whether the detention were under colour of their authority or not.

Fourthly, the defendants should have followed up what they did, by taking the parties, and carrying them before a justice ; else whatever they did was trespass, even if the plaintiffs avoided the arrest. 1 *Esp. Dig.* 337. *Middleton* v. *Price* & al. 1 *Wils.* 17.

Fifthly, the defendants were bound to disclose their authority and the cause. They were not known officers. 2 *Hale's P. C.* 116. 2 *Stark. Ev.* 814.

2. That the evidence respecting the plaintiffs' riding up and

down the street, and their conduct at the taverns and else-where, was irrelevant.

3. That the record was irrelevant.

*Hitchcock*, contra, was stopped by the court.

WAITE, J. Several questions were presennted the motion, in this case, for the consideration of the court.

1. It is claimed, that the court erred in admitting evidence that the plaintiffs came into *Milford* from *New-Haven*, on the *Sabbath* day, and had been riding up and down the streets, going from one public house to another, and what their course of conduct had been, for the purpose of showing, that they were travelling contrary to law. The statute declares, that no traveller shall travel on the *Lord's* day, except from necessity or charity. *Stat.* 385. *tit.* 82. *s.* 1. The act of riding on the *Sabbath* was an equivocal act. It might have been lawful or unlawful, according to the nature and object of the plaintiffs. If it was done from necessity or charity, it was lawful. The conduct of the plaintiffs immediately preceding the arrest, was, with great propriety, admitted as evidence to enable the jury to determine with what intent the plaintiffs were riding at the time of the arrest.

2. The defendants offered evidence by record, that the plaintiffs were, upon complaint made, arrested, and brought before a justice, and convicted of having unlawfully travelled on the *Sabbath*. The court admitted it, for the purpose of proving the fact, that the complaint was pursued, and to repel the plaintiffs' claim, that they were not arrested. It is difficult to perceive in what manner the defendants could have better shown the fact that they pursued their complaint, than by the production of the record, showing the defendants' complaint against the plaintiffs, and the prosecution of it to the conviction of the plaintiffs.

3. The court instructed the jury, that if the plaintiffs were unlawfully travelling on the *Sabbath*, and not from necessity or charity, the defendants might, on sight, stop and arrest them. This power is expressly given by statute. The statute, after prohibiting certain persons from travelling on the *Lord's* day, provides, that " every sheriff, constable, grand-juror and tythingman shall have power, and they are hereby directed,

*New-Haven,*
*July, 1836.*

Ward
*v.*
Green.

to apprehend and carry before a justice of the peace, all persons transgressing this act, to be dealt with according to law, provided they are taken on sight, or immediate information of others." *Stat.* 385, 6. *tit.* 82. *s.* 1, 6. A previous warrant is not necessary, in such cases, to enable a grand-juror to arrest.

4. With respect to the stopping of the plaintiffs' horse and gig, the law upon that subject was correctly stated, by the court, to the jury. It might, in many cases, be extremely difficult to arrest a person travelling in a carriage, unless the person making it has power, in the first instance, to stop the carriage. The defendants, in this case, had a right to do all that was reasonable and necessary to enable them to make the arrest; a duty imposed upon them by law. The question whether the means used by the defendants were reasonable and necessary, was properly submitted to the jury.

5. The court further instructed the jury, that the fact that the plaintiffs were not carried before a magistrate, by the defendants, upon the charge, made no difference, if it arose from the fact that the plaintiffs avoided the arrest. A contrary doctrine would enable the plaintiffs to take advantage of their own wrong. The defendants were required, by law, to make the arrest; and the plaintiffs were bound to submit to it. If the plaintiffs, by their own act, have prevented the defendants from doing what they endeavoured to do, they have no ground of complaint.

6. Grand-jurors are *known* officers, and as such, are not bound to declare their character, nor the cause of arrest, until the party submit to the arrest, or at least demand the cause. They are required to be annually chosen; and their duties are prescribed, by a public statute. *Stat.* 259, 260. *tit.* 45.

We are, therefore, of opinion, that no error has been shown in the proceedings of the court below, in this case; and that, consequently, a new trial must be denied.

The other Judges concurred in this opinion.

New trial not to be granted.