MARTHA P. MARTYN, ADMINISTRATRIX (ESTATE OF JOHN S. MARTYN) [MARY E. MARTYN, ADMINISTRATRIX, SUBSTITUTED PLAINTIFF] *v.* ROBERT DONLIN ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

Argued December 4, 1963—decided February 25, 1964

*William R. Davis*, with whom, on the brief, was *Leon RisCassi*, for the appellant (plaintiff).

*Francis J. McCarthy*, with whom, on the brief, was *Warren Maxwell*, for the appellee (named defendant).

*Richard W. Shettle*, assistant corporation counsel, for the appellee (defendant city of Hartford).

KING, C. J.  This was an action for the recovery of damages for the wrongful death of the plaintiff's decedent, who was shot, on April 20, 1958, just after midnight, by the defendant Robert Donlin, a regular police officer of the defendant city of Hartford, in the course of an attempt to effect the decedent's arrest.  In the first count, damages were sought from Donlin.  In the second count, damages were sought from the city under what is now § 7-465 of the General Statutes.  That statute, under certain conditions, imposes liability on a municipality for damage caused by an employee "if the employee . . . was acting in the performance of his duties and within the scope of his employment, and if . . . [the] injury . . . was not the result of any wilful or wanton act of such employee in the discharge of such duty".  See *Allard* v. *Hartford,* 151 Conn. 284, 286, 197 A.2d 69, and cases such as *Soucy*

v. *Wysocki*, 139 Conn. 622, 628, 96 A.2d 225, and *Lentine* v. *McAvoy*, 105 Conn. 528, 531, 136 A. 76. Presumably because of this limitation in the coverage of the statute, the first count of the complaint was very precisely drafted to allege that the decedent's death "was not the result of any wilful or wanton act of . . . Donlin" and that the death "was caused by the carelessness and negligence of . . . [Donlin] while acting within the scope of his employment as a police officer". Thus under the first count recovery is sought against Donlin in negligence only, and not in assault and battery which is the more usual cause of action in cases such as this. See, for example, *Lentine* v. *McAvoy*, supra, 529.

Whatever may be the full scope and effect of the statute, in no event may the municipality be held liable under it unless the municipal employee himself "becomes obligated to pay [sums] by reason of the liability imposed upon . . . [him] by law for physical damages to person or property". Consequently, unless there was error in the rendition of the judgment in Donlin's favor under the first count, there can be no error in the rendition of the judgment in favor of the defendant city under the second count.

The case was previously before this court on the defendants' appeal; error was found and a new trial was ordered. *Martyn* v. *Donlin*, 148 Conn. 27, 166 A.2d 856. The present appeal is taken from the judgment rendered on the defendants' verdicts on the first and second counts on the retrial.[1]

We turn first to certain rulings on evidence. The

[1] A verdict for the defendant Donlin was directed under the third count, which ran against Donlin only. This action was neither assigned as error nor discussed in the plaintiff's brief.

plaintiff called Donlin as a witness. Since Donlin was an adverse party, the plaintiff, under § 52-178 of the General Statutes, was entitled to a statutory examination which would permit the use of leading questions "which, . . . [prior to the statute], had ordinarily been permitted only in the case of a witness whom the court had found to be hostile or to have so testified as to have worked a surprise or deceit on the examining party". *Mendez* v. *Dorman,* 151 Conn. 193, 197, 195 A.2d 561. There is no claim that the plaintiff was not accorded this statutory examination. Thereafter, counsel for Donlin proceeded to cross-examine him, and in the course of the cross-examination counsel was permitted, over the plaintiff's objection, to ask leading questions. The plaintiff claims this should not have been allowed since Donlin was not hostile to himself. Since our statute removes the requirement of a finding of hostility in fact as a condition precedent to the allowance of leading questions on the statutory (direct) examination of an adverse party, the claim that such a finding is nonetheless a prerequisite to the right to ask leading questions on cross-examination by the adverse party's own counsel would be wholly unfair and is obviously without merit. See *Degelos* v. *Fidelity & Casualty Co. of New York,* 313 F.2d 809, 815 (5th Cir.); *Brookbank* v. *Mathieu,* 152 So. 2d 526, 528 (Fla.). Cases on this point are collected in an annotation in 38 A.L.R.2d 952. There is nothing in the wording of our statute which, except for the elimination of the question of hostility in fact, is even suggestive of any legislative intent either to abridge or to enlarge the usual scope and manner of cross-examination even though it is conducted by counsel for an adverse party who had been called as a witness under the stat-

ute. See *Bushnell* v. *Bushnell,* 103 Conn. 583, 596, 131 A. 432; *Mendez* v. *Dorman,* supra. There was no error in permitting the use of leading questions in Donlin's cross-examination by his own counsel.

One further evidential claim is pursued in the brief. Donlin, on his statutory examination by the plaintiff, testified, in effect, that he filled out two application documents, a "Health Questionnaire" and an application form, as prerequisites to his appointment as a member of the Hartford police force, and that the answers contained in each document were accurate and truthful. The two application documents were admitted in evidence as exhibits. Later on in his examination, however, he, in effect, did admit that those answers were not accurate and truthful. Notwithstanding this admission, the plaintiff, "on the issue of credibility", offered in evidence certain other exhibits, the effect of which was also to indicate that Donlin's statements as to his previous good health, as made in his two application documents, were untrue. See cases such as *Barlow Bros. Co.* v. *Parsons,* 73 Conn. 696, 703, 49 A. 205. Donlin also testified that he had left school in the eleventh grade to join the armed forces. The exhibits just referred to also contained information as to Donlin's personal life and were offered to show, in addition to the above, that Donlin's stated reason for leaving school was untrue. The court excluded these exhibits on the ground that the evidence contained in them was concerned with collateral matters. Although the application documents had been admitted as exhibits, and Donlin had been allowed to testify as to his reason for leaving school, this evidence had not been shown to have been relevant to the issues, nor was its rele-

vancy explained in the plaintiff's brief. Certainly, it had not been shown to have been in anyway relevant to the issue of whether Donlin had been negligent, as alleged in the first count, in shooting and killing the decedent. A statutory examination of an adverse party may amount to a cross-examination. *Mendez* v. *Dorman,* supra. In an attack on his credit, inquiry may be made, in the discretion of the court, as to particular acts of misconduct tending to show a lack of veracity, even though such evidence might be irrelevant to the issues in the case. *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122; *Shailer* v. *Bullock,* 78 Conn. 65, 69, 61 A. 65; McCormick, Evidence § 42. But the exhibits were properly excluded, since, as is explained in *Shailer* v. *Bullock,* supra, extrinsic evidence as to particular acts of misconduct is inadmissible. 3 Wigmore, Evidence (3d Ed.) §§ 981, 987 p. 617. And insofar as this extrinsic evidence tended to contradict Donlin's testimony and the answers in the application documents, it was properly excluded, for a "witness may not be contradicted as to any answer he may have made in respect to an irrelevant fact". *Barlow Bros. Co.* v. *Parsons,* supra, 702; *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 115, 157 A. 902; 3 Wigmore, op. cit. § 1003. The exhibits sought to be admitted indicated that Donlin left school, not because he wanted to join the armed forces, but to escape the adverse effects of acts of misconduct committed when he was a youth. This evidence was documentary and, therefore, extrinsic. Insofar as it was offered to indicate a lack of veracity, it was properly excluded under the rule of cases such as *Shailer* v. *Bullock,* supra. Insofar as it was offered as inconsistent with Donlin's testimony as

to his reason for leaving school, it was properly excluded under the rule of cases such as *Barlow Bros. Co.* v. *Parsons,* supra.

We turn now to certain claimed errors in the charge which are pursued in the brief. These claims of error are to be tested by the claims of proof in the finding with the few corrections to which the plaintiff has shown herself to be entitled. Practice Book, 1963, § 609. Donlin's right to arrest the decedent, since no warrant had been issued, was governed by General Statutes § 6-49, quoted in part in the footnote.[2] *State* v. *DelVecchio,* 149 Conn. 567, 574, 182 A.2d 402.

Under Donlin's claims of proof, he had not seen the decedent committing a felony or received speedy information to that effect. But under our statute, he could still make a lawful arrest without a warrant if he had "reasonable grounds to believe [that the decedent] has committed or is committing a felony". This statute states the common-law rule. See *Sims* v. *Smith,* 115 Conn. 279, 281, 161 A. 239; *State* v. *Carroll,* 131 Conn. 224, 226, 38 A.2d 798. It is true that the only crimes which he had actually seen the decedent commit, and consequently the only crimes which he actually and positively knew the decedent had committed, were motor vehicle violations, including the operation of a new and relatively expensive Pontiac convertible at an excessive rate of speed, and recklessly, in a thickly settled

---

[2] "Sec. 6-49. ARREST WITHOUT WARRANT [P]olice officers, . . . in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members . . . of an organized local police department . . . shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony."

section of the city of Hartford, and passing other cars on their right.

These very facts, however, in combination with other facts which the jury could have found, gave reasonable ground for Donlin's belief, by the time the shooting occurred, that the decedent had stolen the Pontiac. Some of these other facts will now be summarized. The decedent speeded up the Pontiac as he came upon Donlin in his parked, marked, police cruiser; and he succeeded in outdistancing Donlin, who pursued him but who soon after came upon the Pontiac, parked with one wheel on the sidewalk, its lights on and unoccupied. Thereafter, Donlin discovered the decedent coming out of an alleyway, whereupon the decedent turned and ran away and was subsequently discovered by Donlin going over a fence in the backyard of a house. When ordered to stop or he would be shot, the decedent called defiance to the command to stop, whereupon, as he started to disappear over the fence, he was shot by Donlin. Donlin had no knowledge of the neighborhood.

All of this conduct was wholly inconsistent with that to be expected from a person who was facing arrest for a mere motor vehicle violation, but it was conduct which might well be expected, if at all, only from a person fleeing from arrest on a serious charge. Without elaborating further, the foregoing facts were sufficient fully to justify the jury in finding that Donlin had reasonable grounds to believe, as he testified he did believe, that the decedent had stolen the Pontiac. This act would, of course, be a felony under our statute defining a felony as a crime for which the punishment may be imprisonment for more than one year. General Statutes §§ 1-1, 53-57. The jury could, therefore, have found,

as they obviously did, that the arrest was lawful.

Donlin shot the decedent in the attempt to effect his arrest. Donlin makes no claim that he shot in self-defense, although he could not be sure whether the decedent was armed. The decedent was attempting to flee from, as distinguished from physically resisting, arrest. Under our rule, in effecting a legal arrest, the arresting officer may, with the exception hereinafter noted, use such force as he reasonably believes to be necessary, under all the circumstances surrounding its use, to accomplish that purpose, that is, to effect the arrest and prevent an escape. *Lentine* v. *McAvoy*, 105 Conn. 528, 530, 533, 136 A. 76; *Ward* v. *Green*, 11 Conn. 455, 459. This seems to be the general rule. 5 Am. Jur. 2d, Arrest, §§ 83, 84; 6 C.J.S., Arrest, § 13. But the use of a means, or of force, likely to cause death, as was the case here, is privileged only if the arrest was for a felony and the force used was reasonably believed to be necessary to effect that arrest. 2 Swift, Digest, 287, 388; see cases such as *Stinnett* v. *Commonwealth*, 55 F.2d 644, 645 (4th Cir.) (a case where it was virtually undisputed that a felony had been committed); 5 Am. Jur. 2d, Arrest, § 84; 6 C.J.S., Arrest, § 13 (b); note, 60 A.L.R.2d 873, 888.

The plaintiff's claim that the court should have charged that the shooting would not be justified unless a felony had in fact been committed is without merit. Perkins, "The Law of Arrest," 25 Iowa L. Rev. 201, 276. Such a rule would be inconsistent with the statutory right to arrest without a warrant on reasonable grounds for believing—as distinguished from having actual knowledge—that a felony has been committed.

The plaintiff's further claim, embodied in a request to charge, that the right to use force likely

to cause death in effectuating an arrest is limited to certain specific types of felony involving danger of serious injury or death to other persons finds no support in our law. Indeed, it does not seem to be the law elsewhere. Although the rule contended for by the plaintiff originally appeared in the Restatement of Torts (Restatement, 1 Torts § 131), it was discarded in an amendment to § 131 in the 1948 Supplement, page 628, of the Restatement. The foregoing discussion covers the claims of error in the charge, including the failure to give certain requests to charge, insofar as they are pursued in the brief.

The plaintiff makes passing reference in her brief to a claim that there was no evidence that Donlin himself believed that it was necessary to use deadly force to effectuate the arrest. An officer in using deadly force for this purpose must act in good faith. He must have actually believed, and also have had reasonable cause to believe, that it was necessary under the circumstances to use deadly force to make the arrest. *State ex rel. Bumgarner* v. *Sims,* 139 W. Va. 92, 108, 79 S.E.2d 277; *Thompson* v. *Norfolk & W. Ry. Co.,* 116 W. Va. 705, 711, 182 S.E. 880; *Dixon* v. *State,* 101 Fla. 840, 850, 132 So. 684; Perkins, op. cit., 278; 5 Am. Jur. 2d, Arrest, §§ 81, 84 p. 773. Or, in the words of the Restatement, if the attempted arrest is otherwise authorized, the shooting is privileged if "the actor reasonably believes that the arrest cannot otherwise be effected." Restatement, Torts § 131 (c), as amended in 1948 Supplement, p. 628 and see comment (f), p. 630. See *State* v. *Nolan,* 354 Mo. 980, 992, 192 S.W.2d 1016; cf. cases such as *State* v. *Engle,* 115 Conn. 638, 648, 162 A. 922; *State* v. *Perkins,* 88 Conn. 360, 365, 91 A. 265; *State* v. *Bailey,* 79 Conn. 589, 598 n.,

65 A. 951. Donlin testified that he lost sight of the decedent, who disappeared into the darkness as Donlin was chasing him; that when, by using a flashlight, he finally located the decedent, he was already attempting to get over a fence more than three feet high; and that by the time Donlin could have reached the fence, the decedent would have been over it and into the next yard. Donlin further testified that he shot with the sole intent of preventing the decedent from escaping as he started to drop over the fence into the rear yard of a multiple-family dwelling after he had defied Donlin's command to stop or he would be shot. Even though the decedent was but about fifteen feet from Donlin, and two other officers were in the general neighborhood, the jury were fully justified in finding that Donlin reasonably believed that the shooting was necessary to prevent the decedent's escape into the darkness of the night. Furthermore, the first count of the complaint specifically alleged that Donlin's action was neither wanton nor wilful, which it certainly would have been if Donlin had not believed that shooting was necessary to prevent the decedent's escape and to effect his arrest.

One further claim of error may be briefly touched upon. In our opinion in the first appeal in this case (*Martyn* v. *Donlin,* supra, 32), we stated that since the interests of the employee and the municipality might be antagonistic, each should be represented by independent counsel. Accordingly, the city of Hartford, in the retrial, employed two attorneys engaged in private practice to represent Donlin, and the corporation counsel represented the city. The plaintiff claims that this action was not a compliance with the rule given in our former opinion since Donlin's counsel were engaged, and presum-

ably will be paid, by the city. An attorney's allegiance is to his client, not to the person who happens to be paying for his services. There is no question that this duty of allegiance was carried out with skill and industry. Whatever might be the case in other and different factual situations, here the course pursued was proper, and no justification for disqualification of Donlin's counsel is apparent. Furthermore, the plaintiff wholly failed to show how this claimed disqualification in anyway could have been harmful to her. *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742.

The claim that judgment notwithstanding the verdict should have been rendered in favor of the plaintiff against both defendants on the issue of liability does not require discussion. Since there was no occasion for setting aside the verdict in favor of Donlin on the first count, the verdict on the second count in favor of the city of Hartford must also stand.

There is no error.

In this opinion the other judges concurred.